IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES A. PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:08CV856-WKW |
| | ) | |
| STATE OF ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER and RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Charles A. Price, proceeding *pro se*, has filed a motion seeking to proceed *in forma pauperis* in this action (Doc. # 2). Upon consideration of the motion, it is

ORDERED that the motion to proceed *in forma pauperis* is GRANTED. However, upon review of the complaint filed in this case, the court concludes that dismissal of the complaint prior to service of process is appropriate under 28 U.S.C. § 1915(e)(2)(B).[1]

**Background**

In late March 2000 – pursuant to a petition filed by plaintiff's daughter, Lorrie Piazza – Probate Judge Reese McKinney found plaintiff to be mentally ill. Judge Reese committed plaintiff to Bryce Hospital, a state mental health facility. Plaintiff remained at Bryce's Harper Center until May 10, 2000. In October, Judge McKinney again committed the plaintiff to Bryce; he was admitted to the Harper Center on November 9, 2000 and

---

[1] Section 1915 provides, in pertinent part: "[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal– (i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

discharged from the facility on January 22, 2001. In December 2000, during plaintiff's admission, Judge McKinney appointed plaintiff's son, Wayne L. Price, as plaintiff's guardian and as the conservator of plaintiff's estate. Plaintiff was again committed to the Harper Center from July through September of 2001. Judge McKinney later appointed Lorrie Piazza as a successor conservator and guardian. In June 2008, plaintiff filed a petition for removal of the guardianship and conservatorship. Judge McKinney held a hearing on August 29, 2008. He denied the petition for removal, finding plaintiff to be incapacitated, and finding it in plaintiff's best interest to remain under a guardian and conservator. (Complaint and attachments).

Plaintiff, appearing *pro se*, commenced this action on October 27, 2008 against the State of Alabama, Governor Bob Riley, Bryce Hospital, unnamed doctors at Bryce Hospital, Dr. Menon, Dr. Harwood, Probate Judge Reese McKinney, Montgomery County, Lorrie and Mark Piazza (Plaintiff's daughter and son-in-law), Wayne and Lynda Price (plaintiff's son and daughter-in-law), and Michael Winter, plaintiff's former attorney. In a lengthy complaint, plaintiff alleges that his son and daughter lied under oath to obtain plaintiff's involuntary commitment, and that they have stolen or converted his property, mismanaged his estate, and have made erroneous accountings to the probate court. He asserts that Judge McKinney "let them get away with it," and that Judge McKinney's rulings on the involuntary commitment, guardianship and conservatorship petitions were motivated by malice and were incorrect, as was Judge McKinney's ruling on plaintiff's petition for removal of the guardianship and conservatorship. Plaintiff contends that Governor Bob Riley appointed

2

McKinney to his position as probate judge "in an off election year" even though McKinney "has no legal background" and has not attended law school. Plaintiff alleges that defendant Will O'Rear was an attorney on Judge McKinney's staff "who wrote up all of Reese McKinney's legal documents for the Judge to sign" and that he should be held "accountable for giving Reese McKinney poor guidance."

Plaintiff further asserts that Judge McKinney colluded with Michael Winter to continue plaintiff's hearing to a later date so that Winter could charge plaintiff additional attorney's fees. Plaintiff alleges that his daughter-in-law, Lynda Price, "has been complicit in Wayne's activities as my guardian and conservator; using our car for her own purposes and generally attending to matters for Wayne as my legal guardian and conservator," and he maintains that she has benefitted from the guardianship and conservatorship. He asserts that his son-in-law, Mark Piazza, testified at Lorrie's request that plaintiff is incapacitated, and that he has been to plaintiff's house "in the middle of the night to carry out Lorrie's wishes; plaintiff is aware of these visits because "of something that either is missing or left behind." Plaintiff brings claims against the Harper Center and its doctors for "gross negligence." He maintains that the staff failed to give plaintiff medication that he needed for his diabetes. He further states that the doctors at the Harper Center incorrectly diagnosed him with Bipolar Disorder and prescribed Zyprexa, which has caused plaintiff's diabetes to worsen. Plaintiff further complains about the conditions at Harper Center.

Plaintiff does not specify the federal law or Constitutional provision under which he brings his claims; the court construes the complaint as asserting claims pursuant to 42 U.S.C.

§ 1983 for violation of plaintiff's substantive due process rights under the Fourteenth Amendment.

## Appeal of Probate Court Decision

Plaintiff seeks a declaration that plaintiff is not incapacitated or mentally ill and an order terminating both the guardianship and the conservatorship. He demands related injunctive relief, including orders directing that all of plaintiff's possessions be returned to him and allowing plaintiff access to the safe deposit boxes and locked compartments of both guardians so that he may retrieve any items belonging to him. He also seeks an order permitting him access to the banking records of the guardians and their spouses. He asks that the court appoint an attorney to represent him in his efforts to regain what is left of his estate, and that the court obtain copies of all tape recordings of all proceedings before Judge McKinney pertaining to the plaintiff.

Plaintiff requests that this court reverse Judge McKinney's decision regarding the guardianship and conservatorship. Plaintiff states:

> These events have taken place both in Georgia where my son, Wayne lives and where he moved me for a period of about two years while he was my guardian and conservator; and of course, Alabama where Judge McKinney makes his rulings. That being the case, can I not file my appeal in a Federal Court direct and thus avoid any influence McKinney has with the Circuit Court here in Alabama[?] I understand McKinney has an Uncle who is also a Judge in one of our Circuit Courts here in Alabama.

(Complaint, pp. 17-18). Plaintiff does not expressly allege that the probate proceedings violated federal law. Rather, he contends that Judge McKinney's ruling was contrary to the medical evidence presented at the hearing – *i.e.*, the testimony of Dr. David W. Tascarella,

plaintiff's treating psychiatrist, that plaintiff is capable of managing his own estate, and the report of Dr. Malcolm Brown, the court-appointed expert, who examined plaintiff and found no evidence of psychiatric disorder or delusional thinking.

Under the Rooker-Feldman doctrine, "lower federal courts are precluded from exercising appellate jurisdiction of final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006). The doctrine applies to "'cases brought by state-court losers complaining of injuries caused by state-court judgements rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Id. at 464 (citation omitted). Judge McKinney's order denying plaintiff's petition for removal of the guardianship and conservatorship was a final appealable order. See Ala. Code § 12-22-20; cf. Meadows v. Meadows 603 So.2d 884 (Ala. 1992). This court lacks jurisdiction to review that order.[2]

**Federal Claims Against Judge McKinney and Will O'Rear**

Plaintiff demands judgment against Judge McKinney in the amount of $5,000,000.00, plus costs incurred in this court and Judge McKinney's court, and the fee that plaintiff paid to Dr. Tascarella for his appearance as a witness on plaintiff's behalf. (Complaint, pp. 27-28).

---

[2] Plaintiff does not allege that the proceedings violated his procedural due process rights. Even if he had, however, "procedural due process violations do not even exist unless no adequate state remedies are available." Cotton v. Jackson, 216 F.3d 1328, 1331 n. 2 (11th Cir. 2000)(citations omitted). As noted *supra*, state law provides for appeal of the order which plaintiff now challenges.

> The Supreme Court has set forth a two-part test for determining when a judge is entitled to immunity from money damages liability when sued under § 1983. Simmons v. Conger, 86 F.3d 1080, 1084 (11th Cir.1996). First, the judge must have dealt with the plaintiff in his judicial capacity. Id. "[W]hether an act by a judge is a judicial one relates to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." Mireles v. Waco, 502 U.S. 9, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) (quotations and alteration omitted). Second, the judge must not have acted in the "clear absence of all jurisdiction." Simmons, 86 F.3d at 1085. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (quotations and citation omitted).

Jarallah v. Simmons,  191 Fed. Appx. 918, 920, 2006 WL 2242794, 1 (11th Cir. 2006). Plaintiff's allegations against Judge McKinney all have to do with judicial acts taken by Judge McKinney in plaintiff's case and none of the alleged acts were "in the clear absence of all jurisdiction." Under these circumstances, Judge McKinney's absolute judicial immunity bars plaintiff's claim for money damages against him. Additionally, to the extent plaintiff seeks injunctive relief against Judge McKinney, such claims are also barred by judicial immunity. See 42 U.S.C. § 1983 (as amended by Pub. L. 104-317, Oct. 19, 1996).

Plaintiff also seeks judgment in the amount of $5,000,000.00 from Will O'Rear, who plaintiff alleges was an attorney hired by Montgomery County as a full-time advisor to Judge McKinney and who drafted Judge McKinney's orders. Plaintiff contends that O'Rear "must be accountable for giving Reese McKinney poor guidance[.]" (Complaint, p. 4; 27-28). However, "'nonjudicial officials are encompassed by a judge's absolute immunity when their official duties "have an integral relationship with the judicial process."   Like judges, these

6

officials must be acting within the scope of their authority.'" <u>Jarallah</u>, *supra* (citation omitted).  According to the complaint, O'Rear was paid to advise McKinney on legal matters brought before the Probate Court.  Therefore, his official duties had an integral relationship with the judicial process and O'Rear was acting within the scope of his authority in advising McKinney and drafting his orders.  He is also entitled to immunity from plaintiff's claims for damages.  Accordingly, plaintiff may not proceed on his claims against Judge McKinney and Will O'Rear.

## Federal Claim Against Montgomery County

Plaintiff seeks monetary damages from Montgomery County on the basis of the alleged malfeasance by Judge McKinney and Will O'Rear.  <u>See</u> Complaint, p. 27 ("If it possible to cause McKinney to make amends and/or Will O'Rear; then I ask for an award from Montgomery County, Alabama in the amount of $5,000,000.00[.]")  Plaintiff has not alleged that any policy or custom of Montgomery County gave rise to any alleged violation of his federally protected rights, and has alleged no other basis for holding Montgomery County liable.  Because there is no *respondeat superior* liability under 42 U.S.C. § 1983, plaintiff's complaint fails to state a claim against Montgomery County.  <u>Harris v. Ostrout</u>, 65 F.3d 912, 917 (11th Cir. 1995).

## Federal Claim Against Governor Riley

Plaintiff seeks judgment in the amount of $10,000,000.00 from Governor Bob Riley "for having appointed a person (Reese McKinney, a person with no legal background) to the position of Judge of Probate." (Complaint, pp. 30-31).  In Alabama, probate judges are not

required to be attorneys or to have attended law school. See Ala. Code, § 12-13-31. Plaintiff's allegations do not state a claim for violation of state law by Governor Riley, or any violation of federal statutory or constitutional law.[3] Additionally, as noted above, Governor Riley may not be held individually liable under § 1983 simply on the basis of his supervisory role as the chief executive for the State of Alabama. Accordingly, plaintiff states no § 1983 claim against Governor Riley in his individual capacity.

## Federal Claim Against State of Alabama

Plaintiff demands judgment in the amount of $10,000,000.00 from the State of Alabama "for gross negligence at Mary Harper." (Complaint, p. 31).[4] Even assuming that plaintiff's allegations state a violation of federal statutory or constitutional law, the Eleventh Amendment bars plaintiff's claims for monetary relief against the State of Alabama and against Governor Riley in his official capacity. See Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989)("[A] suit against a state official in his or her official capacity

---

[3] The court notes that plaintiff alleges that Judge McKinney has presided over his case since 2000. Since Governor Riley did not take office until 2003, the factual basis for plaintiff's complaint is also unclear.

[4] Most of plaintiff's allegations regarding his treatment at the Harper Center relate to matters which clearly are not of constitutional dimension. For instance, he complains of being unable to watch television programming of his choice, that employees were "unfriendly" to him, that patients are not permitted to choose their roommates, that the bedrooms have beds and clothing lockers but no dressers or other furniture, that he was not allowed to have more than one of the snacks handed out at night, that he had no choice about what to eat at meals, that the food tasted awful, and that he was not permitted refills of coffee. Plaintiff also makes more serious complaints – that an unnamed worker, while searching plaintiff's pocket for eating utensils at the end of the meal, reached into plaintiff's crotch and touched his genitals, and that he was denied Glipizide medication for his diabetes and required to take Zyprexa for an erroneous diagnosis of bipolar disorder.

is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.")(citations omitted). Under the Eleventh Amendment, a state is generally immune from lawsuits brought in federal court by citizens of the state. Hans v. Louisiana, 134 U.S. 1 (1890). The State of Alabama has not waived its Eleventh Amendment immunity, nor has Congress abrogated that immunity in § 1983 cases. Cross v. State of Alabama, 49 F.3d 1490, 1502 (11th Cir. 1995)(citing Carr v. City of Florence, 916 F.2d 1521, 1524 (11th Cir. 1990)); Alabama Constitution of 1901, Article 1, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."). Accordingly, plaintiff's claims for monetary relief against the State of Alabama and Governor Riley (in his official capacity) are due to be dismissed.

### Federal Claim Against Winter

Plaintiff seeks an award of $5,000,000.00 against Michael Winter, his former attorney. Plaintiff alleges that Dr. Tascarella came to Montgomery to testify for the plaintiff, that Winter met with Judge McKinney in chambers just as the hearing began and that, during the hearing, Winter "did not open his mouth to ask that we be allowed to testify." Plaintiff alleges that Winter "charged [plaintiff] an up-front fee for his services in the amount of $2,500.00." (Complaint, p. 20). Plaintiff contends that Winter "colluded with the Judge to not hear my case so he could charge me another $2,500.00 at another Hearing to be set at a future date." (Complaint, p. 20).

> In order to prevail on a civil rights action under § 1983,
> a plaintiff must show that he or she was deprived of a federal right by a person

9

>acting under color of state law.  A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state. 'The dispositive issue is whether the official was acting pursuant to the power he/she possess by state authority or acting only as a private individual.'

Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001)(citations omitted).  The facts alleged by plaintiff – that his attorney met with the judge in chambers and then did not ask to put plaintiff or Dr. Tascarella on the stand – are far from sufficient to permit an inference of the existence of any agreement between Winter and Judge McKinney to deprive plaintiff of an additional $2,500.00 in attorney fees.  Plaintiff's conclusory allegation of collusion is not sufficient to show that Winter was a state actor for purposes of § 1983.  See Dessasau v. Cook, 2001 WL 34395880 (11th Cir. Mar. 15, 2001)(upholding dismissal of § 1983 claims against private individuals where the plaintiff "made only conclusory allegations regarding the existence of a conspiracy with state actors").  Accordingly, plaintiff has failed to state a § 1983 claim against Winter.

## Federal Claim Against Family Members

Plaintiff alleges that his children lied under oath to Judge McKinney to obtain and maintain the legal declaration of plaintiff's incompetence, and that they have stolen from him, engaged in self-dealing, and/or negligently squandered his assets.   He alleges that their spouses have supported or aided them in this activity and have benefitted from it.  Plaintiff's factual allegations do not support a conclusion that his children or their spouses are "state actors" for purposes of § 1983.  Plaintiff's family members "cannot be held liable under § 1983 for their resort to state tribunals.  Use of the courts by private parties does not

constitute an act under color of state law." Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992). Plaintiff alleges perjury by his family members, and maintains that Judge McKinney "let them get away with it," but fails to allege facts sufficient to permit an inference that Judge McKinney had actual knowledge that the testimony presented in his court was false. See id. ("Without the judge's knowledge, the complaint fails to properly allege conspiracy involving a state actor. At best, it presents a claim for misuse of state judicial procedures, for which there is no action under section 1983). Although plaintiff makes conclusory allegations of a conspiracy between Wayne Price and Judge McKinney,[5] his factual allegations are insufficient to permit an inference that Judge McKinney, a state actor, reached an agreement with Wayne Price or any other of plaintiff's family members to violate plaintiff's rights. See id. ("For purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons.")(citation omitted). Accordingly, plaintiff fails to state a claim for relief under § 1983 against Wayne Price, Lynda Price, Lorrie Piazza

---

[5] See *e.g.*, Complaint, Doc. 1-3 at p. 14 ("For whatever reason there seems to be some sort of un-Holy alliance between Wayne and Reese McKinney."). Plaintiff's basis for this conclusion is his allegation that Wayne Price received notice from the court regarding the hearing on plaintiff's petition for removal of the guardianship and conservatorship. (Id.). However, a hearing on a termination petition is considered to be a continuation of guardianship and conservatorship proceedings. Pope v. Bolin, 140 So. 382, 383 (Ala. 1932). Judge McKinney's order setting the hearing on plaintiff's petition directed that plaintiff's counsel provide notice to the categories of interested people identified in Ala. Code §26-2A-103(a), and as authorized by § 26-2A-103(b). See Complaint, Doc. 1-2, pp. 23-24. The statute specifically lists "adult children" as among those entitled to notice. The only other basis for plaintiff's conclusory allegation of an "alliance" appears to be that Judge McKinney has ruled in favor of plaintiff's children and against the plaintiff in the guardianship and conservatorship proceedings.

or Mark Piazza.[6]

### Federal Claims Against Doctors at Mary Harper[7]

Plaintiff demands judgment in the amount of $10,000,000.00 "to be paid by the Doctors at Mary Harper as a group," and demands an additional $5,000,000.00 each against Dr. Harwood and Dr. Menon. He alleges that all of the doctors were responsible for "the remova[l] of my Glipizide 5 MG tablets from my person when I entered Mary Harper." Plaintiff alleges that he took this medication for treatment of his diabetes, but that the "pills . . . were placed in a closet behind the nursing station and in spite of my plea to allow me to take them, they refused." (Complaint, p. 31).[8]

Plaintiff makes no allegations of specific conduct by any doctor at the Harper Center, except for Drs. Harwood and Menon. He alleges that he asked Dr. Harwood "for several days" to allow him to take the Glipizide, but that Dr. Harwood refused until after an incident during which plaintiff attempted to jump over the counter at the nurses' station to retrieve

---

[6] In a pleading filed on November 4, 2008 (Doc. # 5, docketed as amendment to complaint), plaintiff suggests – because his daughter has now provided him with a debit card – that the court has contacted his daughter about this case. The court has not communicated with Lorrie Piazza, or any other defendant, regarding plaintiff's lawsuit.

[7] Plaintiff's involuntary commitments to the Harper Center occurred in 2000 and 2001. In view of Judge McKinney's order that plaintiff remains incompetent (and despite plaintiff's allegations to the contrary), the court does not reach the statute of limitations issue. See Ala. Code, § 6-2-8(a).

[8] Plaintiff alleges that the refusal to allow him to take his Glipizide tablets could have resulted in a diabetic coma; however, in plaintiffs' case, it did not. (Complaint, pp. 31-32).

the pills.[9] Plaintiff alleges that Dr. Menon told him that "when they could not find anything wrong with an incoming patient; they always said that person had Bi-polar Disorder." (Complaint, pp. 33-34). However, plaintiff does not allege that Dr. Menon herself made the allegedly incorrect diagnosis, nor does he allege that he was not exhibiting any symptoms which could reasonably lead to such a diagnosis.[10] Plaintiff acknowledges that the Harper records "show that I was already taking Zyprexa when I first entered that facility but if I was, it is because I was started on it at Jackson Hospital." (Complaint, p. 34). Plaintiff complains that he now suffers leg cramps and neuropathy as a result of the administration of Zyprexa during his commitment to the Harper Center, but also alleges that Zyprexa was commonly prescribed for bipolar disorder, that the manufacturer of Zyprexa "did not tell anybody about the bad side effects . . . which they knew about when they put it on the market," and that "[i]t may be that knowledge of the side effects of Zyprexa were not generally known" during his treatment at the Harper Center. (Complaint, pp. 33-34). Plaintiff does not suggest that the doctors at the Harper Center did not actually use professional judgment in making decisions regarding his medical treatment. Rather, he contends that their decisions constituted "gross negligence." (Complaint, p. 31). Plaintiff's allegations are insufficient to state a § 1983 claim for violation of his Fourteenth Amendment rights. See Lavender v. Kearney, 206 Fed.

---

[9] Plaintiff alleges that Dr. Harwood relented after plaintiff told him "that if he did not do something about my blood sugar and soon I would be coming after him personally." (Complaint, p. 32).

[10] Additionally, as discussed previously, plaintiff has been adjudged incompetent by a final order of the probate court, review of which is not within this court's jurisdiction.

Appx. 860, 863 (11th Cir. Oct. 18, 2006)("[F]or an involuntarily civilly-committed plaintiff to establish a § 1983 claim for violation of his due process rights, he must show that state officials were deliberately indifferent to a substantial risk to his safety.")(citing <u>Purcell v. Toombs County, GA</u>, 400 F.3d 1313, 1319 (11th Cir. 2005)(pretrial detainee case)); <u>cf</u>. <u>Burnette v. Taylor</u>, 533 F.3d 1325 (11th Cir. 2008)(in pretrial detention context, "gross negligence" insufficient to sustain § 1983 Fourteenth Amendment deliberate indifference claim); <u>see also</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982)(treatment decision made by a medical professional is presumptively valid; no liability under Fourteenth Amendment due process clause unless evidence demonstrates that the professional actually did not base decision on professional judgment).

Additionally, plaintiff's complaint does not meet the heightened pleading standard applicable to individual capacity § 1983 claims. <u>See</u> <u>Twilley v. Riley</u>, 2008 WL 2906738, 2 (11th Cir. Jul. 30, 2008)(upholding § 1915 dismissal where defendants were entitled to assert the defense of qualified immunity, and the plaintiff's "'vague and conclusory' allegation [was] not sufficient to meet the heightened pleading requirement for § 1983 actions.").

### Claims on behalf of Leona Price and Patients at Bryce Hospital

Plaintiff claims that Lorrie is controlling the medication administered to his wife, Leona, by a paid caregiver and that Lorrie is also controlling Leona's Social Security benefits. Plaintiff seeks a restraining order against Lorrie and Mark Piazza so that plaintiff may assume full responsibility for Leona's care. Plaintiff further asks that "something be

done with the situation at Bryce Hospital," since its employees are unsuited to care for the indigent wards placed under their care.[11] The statute permitting *pro se* appearances in federal court applies only to those parties conducting their own cases and not to those parties who seek to represent the interests of others.  28 U.S.C. § 1654.  See Devine v. Indian River County School Board, 121 F.3d 576 (11th Cir. 1997); Shepherd v. Wellman, 313 F.3d 963 970 (6th Cir. 2002)("Although 28 U.S.C. § 1654 provides that '[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel,' that statute does not permit plaintiffs to appear *pro se* where interests other than their own are at stake.")(citing Pridgen v. Andresen, 113 F.3d 391, 393 (2nd Cir. 1997)).  Plaintiff, as a *pro se* litigant, may not prosecute claims in this court on behalf of others.[12]

## Motion for Leave to Amend

On November 24, 2008, plaintiff filed a motion for leave to amend his complaint.

---

[11] Many of the allegations of plaintiff's complaint have to do with the treatment of other patients at the Harper Center.  Plaintiff states:

> And lastly I ask (certainly I have no authority) that something be done with the situation at Bryce Hospital in Tuscaloosa, Alabama.  Present conditions should not be allowed to continue without some strong over-riding supervisory force in control The Employees (one and all as far as I am concerned) are not suited to fill the slots they are respectively in; to serve those indigent wards who are so unfortunate as to have been, by necessity, placed under their care.

(Complaint, p. 28).

[12] Because of this conclusion, the court does not reach the constitutional standing issue. Additionally, because this case has not proceeded beyond initial screening and there has been no objection, the court's recommendation does not rest on the requirement of Rule 17(a)(1) that a case be prosecuted in the name of the real party in interest.

15

(Doc. # 6). He alleges that Lorrie and Mark Piazza, presumably with the assistance of Judge McKinney, forced Classic Cadillac to pay $3,850.49 – a refund owed by Classic Cadillac to plaintiff – to Lorrie Piazza. Plaintiff seeks an order directing that the allegedly stolen money be returned to him. He also seeks an award of $150.00 to Classic Cadillac for the attorney fees it incurred in the matter, and plaintiff "hereby files criminal charges against Respondents for theft and seeks fines and/or impris[]onment of Respondents."

As discussed above, plaintiff cannot bring claims on behalf of a third party. His new civil claim against Lorrie and Mark Piazza fails unless Judge McKinney's guardianship/conservatorship order is set aside and, as discussed previously, this court is without jurisdiction to review that final order. Additionally, plaintiff may not assert criminal charges against the defendants through this civil action. "A private individual does not have standing to demand the criminal prosecution of another individual, let alone standing to prosecute the individual himself." Davit v. Davit, 173 Fed. Appx. 515 (7th Cir. Mar. 29, 2006)(unpublished opinion)(citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) and Johnson v. City of Evanston, Ill., 250 F.3d 560, 563 (7th Cir. 2001)); see also United States v. Nixon, 418 U.S. 683, 694 (1974)(A federal criminal prosecution is a "judicial proceeding in a federal court alleging violation of federal laws and is brought in the name of the United States as sovereign. . . . Under the authority of Art. II, § 2, Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government.")(citations omitted); Linda R.S., *supra*, 410 U.S. at 619 ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.");

16

Nguyen v. Green, 1993 WL 53164 (4th Cir. Mar. 2, 1993)(unpublished opinion), *cert. denied*, 508 U.S. 978 (1993)("Only the sovereign may bring criminal charges; a private citizen may not use the courts as a means of forcing a criminal prosecution.")(citing Nixon, *supra*). Accordingly, plaintiff's motion for leave to amend the complaint (Doc. # 6) is due to be denied as futile.[13] See Grayson v. K-Mart Corporation, 79 F.3d 1086, 1110 (11th Cir. 1996).

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that plaintiff's federal claims be DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)[14] and – to the extent that his complaint brings state law claims – that the court decline to exercise supplemental jurisdiction over those claims. The Magistrate Judge further recommends that plaintiff's motion for leave to amend the complaint (Doc. # 6) be denied.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any objections to this Recommendation on or before December 9, 2008. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the

---

[13] Plaintiff has once previously amended his complaint (see Doc. # 3), so he may not again amend the complaint without leave of court. Fed. R. Civ. P. 15(a).

[14] Since the court's initial review of the complaint reveals that all of plaintiff's federal claims are due to be dismissed, the court declines to appoint a guardian *ad litem*.

Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. V. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 26th day of November, 2008.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE